IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN McGAHA,

    Defendant.

No. CR 15-0126 WHA

**ORDER DENYING RULE 29 MOTION**

## INTRODUCTION

A jury convicted defendant of conspiracy to distribute a controlled substance in violation of 21 U.S.C. 846. Now, defendant moves for a judgment of acquittal under Rule 29. For the reasons stated herein, defendant's Rule 29 motion is **DENIED**.

## STATEMENT

After a four-day trial, a jury convicted defendant John McGaha, a South Carolina Highway Patrol Trooper, of conspiracy to distribute a controlled substance in violation of 21 U.S.C. 846.

The events of this case arose from a money laundering scheme involving multiple co-defendants and an undercover agent. From February 2012 to March 2014, co-defendants Vladimir Handl and Michael Rose laundered hundreds of thousands of dollars (April 29 Tr. at 61–62). Throughout the money-laundering conspiracy, Handl repeatedly asked the undercover agent to supply him with drugs (he believed that the undercover agent was working on behalf of the Columbian cartel) (*id.* at 64). The undercover agent proposed the idea of recruiting one of

1  Rose's law enforcement acquaintances to protect a potential drug transaction (*id.* at 75). A plan
2  was hatched to purchase three kilograms of cocaine from the agent on March 18, 2015, using
3  co-defendant David Fink's property as collateral for a loan to finance the deal (*id.* at 85–90).

4  On March 17, 2015, Rose, the undercover agent, and co-defendant David Gaither
5  discussed the possibility of recruiting a law enforcement agent to protect the planned drug deal
6  (*id.* at 100). Gaither suggested McGaha because he had previously seen McGaha in a backroom
7  of a nightclub with suspected drug users and materials sometimes associated with cocaine use
8  (*id.* at 154).

9  On the same day, McGaha's first connection to the scheme, Gaither and Rose met
10 McGaha in the parking lot of a grocery store to discuss the possibility of McGaha providing
11 security for a deal. Gaither asked McGaha if he would be interested in working security for a
12 "transfer" in exchange for $5,000. Gaither testified that Rose told McGaha, "well, let's just call
13 it 'pineapples.'" Gaither testified that in response, McGaha said, "well, the least I know, the
14 better." Gaither then stated, "Yeah, the least you know, the better. But it's going to be a lot"
15 (*id.* at 158–159). The word "cocaine" never was used. Nor was "drugs." The one reference
16 was to "pineapples."

17 Later that day, Gaither met McGaha near his apartment. Gaither testified that he told
18 McGaha the following: "the gentlemen were interested . . . in him providing security for them,
19 but he was going to have to talk to one of them on the phone. If he didn't want to do it, I
20 understood." According to Gaither, McGaha stated: "Yeah, I'll do it." Gaither handed
21 McGaha a phone, and McGaha spoke with an undercover agent, who recorded the conversation.
22 The undercover agent told McGaha that the phones were "virgins," and that they could speak
23 freely. McGaha agreed to be the "eyes and ears looking at whatever we need to be worried
24 about" during the transfer. McGaha agreed to speak up if the location selected for the transfer
25 turned out to be near to locations frequented by police officers. The undercover agent also
26 asked if McGaha had access to information about the activities of the "alphabet people, the
27 Feds." McGaha responded that he previously had relationships with them and offered to "work
28 on reconnecting." The undercover agent also told McGaha that the delivery involved "flowers"

2

1 and that money would not be exchanged during the transfer (Ex. 11). After the call, Gaither
2 gave McGaha $5,000 (April 29 Tr. at 165).

3     On March 18, 2015, the morning of the planned deal, FBI agents arrived at McGaha's
4 apartment to interview him.* One of the FBI agents, Agent Joseph Vetter, testified that McGaha
5 admitted that Rose and Gaither had asked him to hang out in a parking lot while they
6 "conducted business." McGaha told Agent Vetter that "he didn't know what the business was"
7 and that he "didn't want to know" (May 2 Tr. at 133). Agent Vetter also testified that McGaha
8 said that he "knew it was wrong and that it was illegal" and that "it was outside the scope of his
9 employment." At one point, Agent Vetter testified that McGaha stated: "the money is what
10 always gets you, not the drugs." Agent Vetter subsequently paraphrased the statement
11 differently: "[h]e told us that it was not the money that gets you; it's the drugs" (*id.* at 141).
12 Agent Vetter later clarified, however, that McGaha had stated: "[i]t was the money that always
13 gets you, not the drugs" (*id.* at 143).

14     Agent Vetter testified that McGaha's demeanor changed over the course of the interview
15 and that, in response to questions about the planned deal, "he was much more hesitant in his
16 answers" (*id.* at 137).

17     At the close of the government's case, McGaha took the stand. His attorney asked him
18 if he had made a statement about "not wanting to know" during his meeting with Rose and
19 Gaither. McGaha admitted making such a statement. McGaha testified, however, that he made
20 this statement *after* Gaither or Rose made a similar statement to him (May 2 Tr. at 209).
21 McGaha also testified that neither Rose nor Gaither used the term "pineapple" to describe the
22 item to be delivered but that Rose had "said something about 'melons' and 'DVDs'" (May 2 Tr.
23 at 206). On direct examination, his attorney asked him if he had told Agent Vetter that "money
24 always gets you, not the drugs." McGaha admitted making the statement. McGaha testified,
25 however, that he made this statement only after Agent Vetter explained that the deal was a set
26 up and that the word "pineapple" meant cocaine (May 3 Tr. at 25).

---

* McGaha received *Miranda* warnings and signed an advice of rights form (Ex. 5).

3

A jury returned a verdict finding that the government had proven its case as to conspiracy to distribute a controlled substance. The jury concluded, however, that the government had *not* met its burden as to whether it was reasonably foreseeable to McGaha that the controlled substance involved was cocaine — a charge that would have carried a minimum sentence.

Now, defendant moves for a judgment of acquittal under Rule 29. McGaha made this motion at three different times: (1) at the close of the government's case; (2) at the end of the defense case; and (3) after the jury reached its verdicts.

**ANALYSIS**

The analysis must begin by acknowledging that the trial evidence that the accused knew or should have known that he was involved in a drug deal was thin. That, however, is not dispositive.

Rule 29(c) provides that a defendant may move for a judgment of acquittal, or renew such a motion, after a guilty verdict or after the court discharges the jury. The standard for deciding a motion under Rule 29(c) is well-settled: "The evidence is sufficient to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vgeri*, 51 F.3d 876, 879 (9th Cir. 1995) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The "evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). "[A] district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

McGaha was charged with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. 846, which requires that the government prove two elements. *First*, the government must prove that there was an agreement between two or more persons to distribute a controlled substance or to possess with intent to distribute a controlled substance.

*Second*, the government must prove that the accused joined in the agreement knowing of its purpose and intending to help accomplish that purpose. *See United States v. Reed,* 575 F.3d 900, 923 (9th Cir. 2009); *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002). The jury was given the following instructions on conspiracy (Dkt. No. 426):

> In order for the accused to be found guilty of that conspiracy, the government must prove each of the following elements beyond a reasonable doubt:
>
> *First*, beginning on or about March 6, 2014, and continuing until on or about March 18, 2015, there was an agreement between two or more persons to (1) distribute a controlled substance, or (2) to possess with intent to distribute a controlled substance. The government does not have to prove both distribution and possession with intent to distribute were committed in order for you to find that the government has established this first element of this conspiracy charge; however, you must unanimously agree that the government has proven beyond a reasonable doubt that there was an agreement involving at least distribution or possession with intent to distribute in order for you to find that the first element has been satisfied.
>
> *Second*, the accused joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The jury was also instructed that it could find that McGaha acted knowingly if he was deliberately ignorant:

> You may find that the accused acted knowingly if you find beyond a reasonable doubt that the accused was aware of a high probability that the purpose of the conspiracy was to distribute a controlled substance, and deliberately avoided learning the truth.

*See United States v. Heredia*, 483 F.3d 913, 917 (9th Cir. 2007).

McGaha's motion does not contest the sufficiency of the evidence showing the existence of the conspiracy to distribute a controlled substance as of March 17, 2015 (Br. 3). Rather, McGaha asserts that no rational trier of fact could have concluded that he joined in the conspiracy knowing of its purpose. The motion focuses on whether the evidence showed that McGaha *knew* the transfer involved a controlled substance. But the government could meet its burden by proving that McGaha was aware of a high probability that the purpose of the conspiracy was to distribute a controlled substance and that he nevertheless deliberately avoided learning the truth. This order must evaluate whether the government met this burden based on

5

the evidence at the close of the government's case and, separately, at the close of the defense case.

At the close of the government's case, a rational jury member could have inferred from the evidence presented during the government's case that McGaha was aware of a high probability that the purpose of the conspiracy was to distribute something illegal. *First*, McGaha admitted knowing that his role in the transfer was illegal (May 2 Tr. at 141). *Second*, McGaha knew that the transfer would happen in a parking lot. The jury could have reasonably inferred from that fact that the item must have been compact enough to be transferred between cars. *Third*, he knew that euphemistic terms were used to describe the item to be transferred ("pineapple," "flowers") even if he did not know exactly what those terms meant. *Fourth,* McGaha knew that the individual orchestrating the transfer (who turned out to be an undercover agent) wanted to discuss the transfer on "virgin" phones on which the subject could be discussed "freely." *Fifth,* McGaha knew that the individual orchestrating the transfer wanted to make sure the transfer did not take place near locations frequented by police. *Sixth*, McGaha knew that the individual orchestrating the transfer wanted information on the activities of "the Feds." *Seventh,* McGaha did not offer up another explanation for the item to be transferred when he was interviewed by Agent Vetter.

A rational trier of fact could have also concluded that, in the face of that high probability, McGaha deliberately avoided learning the truth. McGaha told Gaither and Rose, "well, the least I know, the better" (April 29 Tr. at 158–159). Moreover, he asked *no* questions about what would be transferred despite the suspicious circumstances surrounding the transfer — the use of "virgin" phones, the avoidance of law enforcement.

At trial, the government elicited differing testimony from Agent Vetter regarding an incriminating statement made by McGaha at the end of the interview on March 18, 2016. At one point, Agent Vetter testified that McGaha stated: "the money is what always gets you, not the drugs" (May 2 Tr. at 141). Agent Vetter subsequently paraphrased the statement differently: "[h]e told us that it was not the money that gets you; it's the drugs" (*ibid.*). Agent Vetter later clarified, however, that McGaha had stated: "[i]t was the money that always gets

6

you, not the drugs" (*id.* at 143).  Under either version of the statement, however, the jury could infer that McGaha was aware all along that the transfer involved a controlled substance.  In short, a rational trier of fact could have inferred that McGaha knew or was aware of a high probability that the illegal goods were controlled substances based on his drugs comment at the end of the interview — even though an innocent interpretation of that comment was plausible too.

In his motion, McGaha focuses on whether the government had proven that McGaha knew the meaning of "pineapples."  It is true that the evidence as to McGaha's knowledge of the meaning of the word "pineapple" was weak.  The government also did not provide sufficient evidence that "pineapple" is a standard street name for cocaine.  But the government need not prove that McGaha knew the meaning of "pineapples" to prove he was aware of a high probability that the item to be transferred was a controlled substance and that he deliberately avoided learning the truth.

McGaha also argues that his trust in Rose and Gaither explains how he could have assumed the transfer involved something other than drugs.  While this argument has some merit, a rational trier of fact could have concluded otherwise.

This order also concludes that a rational trier of fact could have concluded the government met its burden even after the close of the defense case.  It is true that the defense presented evidence from which the jury could have discounted two of the incriminating statements made by McGaha.  McGaha testified that he made the statement "the least I know, the better" only *after* Gaither or Rose made a similar statement to him.  McGaha also admitted that he made the statement "the money is what always gets you, not the drugs" only after Agent Vetter explained that the deal was a set up and that the word "pineapple" meant cocaine (May 3 Tr. at 25).  But a rational trier of fact could have doubted McGaha's credibility.  Moreover, even if the jury believed McGaha's explanations of these statements, the jury could have nonetheless concluded that McGaha was aware of a high probability that the purpose of the conspiracy was to distribute a controlled substance and that, despite that, he deliberately avoided learning the truth.

1  Resolving all inferences in favor of sustaining the verdict, a rational trier of fact could have concluded — at the close of the government's case and again at the close of the defense case — that McGaha closed his eyes to the high probability of a drug deal.

## CONCLUSION

It is questionable whether the United States should be engaged in drawing otherwise law-abiding peace officers into synthetic crimes like this one (rather than solving real crimes) but for reasons known only to it, protected by our separation of powers, the United States has done so here. The Court feels constrained under the law to uphold the conviction.

For the reasons stated herein, defendant's motion for acquittal under Rule 29 is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 19, 2016.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8